**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DUSTIN E. ATWOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-CV-1394 JAR |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Dustin E. Atwood's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. For the reasons discussed below, the decision of the Commissioner will be affirmed.

**I.    Background**

On September 13, 2018, Plaintiff filed applications for DIB and SSI with an alleged disability onset date of June 1, 2018. (Tr. 10, 185–91, 192–97).[1] Plaintiff claimed disability due to anxiety, depression, obesity, arthritis of the back, neck, joints and hands, and disc disease causing swelling of the spine. (Tr. 118). Plaintiff's counsel characterized these conditions as "a combination of physical and mental impairments," that compound one another. (Tr. 34). After his

---

[1] Plaintiff previously filed Title II and Title XVI applications for DIB and SSI benefits on January 2, 2016, alleging a disability onset date of December 5, 2015. The ALJ rendered a partially favorable decision (the "Prior Decision") on May 31, 2018 finding that Plaintiff had been disabled between December 8, 2015 and February 12, 2018. The ALJ determined that medical improvement occurred as of February 13, 2018, i.e., Plaintiff's depression and anxiety had improved and was no longer severe. Accordingly, his disability ended on that date. (Tr. 61–72).

1

applications were initially denied on December 19, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 118, 125). A hearing was held on October 28, 2019. Plaintiff was represented by counsel at the hearing, and the ALJ heard evidence from both Plaintiff and an impartial vocational expert ("VE"). After considering the testimony and record evidence, the ALJ issued an unfavorable decision on December 31, 2019. On August 7, 2021, the Appeals Council denied Plaintiff's request for review. (Tr. 1–3). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 560 U.S. 103, 107 (2000). Plaintiff filed this appeal on September 29, 2020. (Doc. No. 1). The Commissioner filed the answer on March 25, 202. (Doc. No. 15). Thereafter, Plaintiff filed his brief in support of the Complaint (Doc. No. 23) and the Commissioner filed her brief in support of the answer (Doc. No. 24).

## II.     Facts

This Court adopts Plaintiff's Statement of Uncontroverted Material Facts (Doc. No. 23-1) to the extent they are admitted by the Commissioner (Doc. No. 24-1). The Court also adopts the Commissioner's Statement of Additional Material Facts. Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## III.    Standards

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Adkins v. Comm'r, Soc. Sec. Admin., 911 F.3d 547, 550 (8th Cir. 2018); see also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019) (citing Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The

2

Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id. The Court defers heavily to the findings and conclusions of the Social Security Administration. Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010)).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); see also Stamper v. Colvin, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R.

4

§§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); Perks v. Astrue, 687 F.3d 1086, 1091-92 (8th Cir. 2012). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of

5

persuasion to prove disability, however, remains with the claimant." Harris v. Barnhart, 356 F.3d 926, 931 n. 2 (8th Cir. 2004); see also Stamper, 174 F. Supp. 3d at 1063.

### IV. Decision of the ALJ

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity following the alleged onset date. (Tr. 12). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: obesity, degenerative disc disease in the lumbar spine, generalized anxiety disorder, persistent depressive disorder, and post-traumatic stress disorder (PTSD). (Id.). The ALJ also considered Plaintiff's hypertension but found it caused no functional limitations and was therefore non-severe. (Tr. 13).

At step three the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (Id.). In doing so, the ALJ specifically found that Plaintiff's obesity, alone or in combination with another impairment, did not equal a Listing in severity. (Id.). The ALJ also considered Plaintiff's degenerative disc disease and found that it did not equal a Listing in severity. (Id.). Next, the ALJ found that Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15, because he did not have either one extreme limitation or two marked limitations in a broad area of functioning. (Id.).

After consideration of the medical record and testimony, the ALJ assessed Plaintiff's RFC as only permitting sedentary work as defined in 20 C.F.R §§ 40.1567a, 416.967(a), with the following limitations: "He can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel and crouch, but never crawl. He should avoid exposure to excessive vibration. He should avoid exposure to operational control of moving machinery, unprotected heights and exposure to hazardous machinery. His work is limited to

simple, routine and repetitive tasks. He should have no interaction with the public. He should have only occasional interaction with co-workers and supervisors with no tandem tasks." (Tr. 14-15). In so limiting Plaintiff, the ALJ found at step four that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical [and other] evidence . . . ." (Tr. 16). The ALJ found that Plaintiff's past relevant work as a cashier, telemarketer, case aide, and school bus monitor all exceed the limitations of his RFC and accordingly proceeded to step five. (Tr. 20).

At step five, the ALJ considered Plaintiff's age, education, work experience and RFC and concluded that significant jobs exist in the national economy that Plaintiff could perform. (Id.). Specifically, the ALJ adopted the VE's testimony that significant jobs compatible with Plaintiff's RFC exist as a final assembler, document preparer, and polisher implant. (Tr. 21, 53–55).

## V.   Discussion

Plaintiff raises one issue on appeal. He argues the ALJ failed to properly evaluate the opinion of his treating psychiatrist, John T. Paruch, M.D. (Doc. No. 23 at 4). In particular, Plaintiff argues the ALJ failed to explain how he considered the supportability and consistency factors required by statute to be considered when assessing the persuasiveness of a medical source's opinion, see 20 C.F.R. § 404.1520c(c)(2), focusing instead on the length of Plaintiff's treatment relationship with Dr. Paruch. In response, the Commissioner asserts that the ALJ properly considered the medical opinion evidence in assessing Plaintiff's mental limitations. (Doc. No. 24 at 4-9).[2]

---

[2] Because Plaintiff does not take exception to the ALJ's physical RFC findings, the Court will only address the evidence of record as it relates to the ALJ's mental limitations.

7

Under the applicable regulations, no single medical opinion or medical source is given any specific evidentiary weight, including controlling weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Where, as here, the claim is filed after March 27, 2017, the ALJ is now required to evaluate the persuasiveness of medical opinions and prior administrative findings with consideration of five factors: supportability,[3] consistency,[4] relationship with the claimant (including length of treatment relationship, frequency of examination, purpose of treatment relationship, and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion ...." Id. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). When an ALJ evaluates the persuasiveness of medical opinions, supportability and consistency are the "most important factors." Id. §§ 404.1520c(a), 416.920c(a).

In his decision, the ALJ must "articulate ... how persuasive [he] find[s] all of the medical opinions ...." Id. §§ 404.1520c(b), 416.920c(b). Three "articulation requirements" must be met. Id. §§ 404.1520c(b)(1)-(3), 416.920c(b)(1)-(3). First, "when a medical source provides multiple medical opinion(s) ... [the ALJ] will articulate how [he] considered the medical opinions ... from that medical source together in a single analysis using the factors" identified above. Id. §§ 404.1520c(b)(1), 416.920c(b)(1). Second, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions." Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Third, when the ALJ finds "two or more medical opinions ...

---

[3] Supportability is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[4] Consistency is defined as "[t]he more relevant a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

about the same issue are both equally well supported ... and consistent with the record ... but are not exactly the same, [the ALJ] will articulate how [he] considered the other most persuasive factors" set forth above. Id. §§ 404.1520c(b)(3), 416.920c(b)(3).

On September 30, 2019, Dr. Paruch completed a mental RFC form for Plaintiff and assessed disabling mental limitations, including 10% to 20% reductions in work-related functions involving understanding, concentration, memory, social interaction, and adaptation during an 8-hour workday. (Tr. 396-98). Dr. Paruch opined that Plaintiff would miss two or more days of work per month due to psychologically based symptoms and that his limitations were supported by depression and anxiety inventory testing. (Tr. 398).

The ALJ considered Dr. Paruch's opinion and found it unpersuasive as it was generally inconsistent with his mental status examinations. (Tr. 19). Additionally, Dr. Paruch had limited experience with Plaintiff, having provided his opinion after only two visits with him. (Id.). The ALJ also noted that treatment records from Plaintiff's primary care providers indicated mostly normal mental status examinations aside from anxiety related to Plaintiff's mother and improved mental functioning while on Cymbalta. (Id.).

Plaintiff maintains these reasons for finding Dr. Paruch's opinion unpersuasive are not supported by substantial evidence. Plaintiff argues the ALJ's focus on the length of his treatment relationship and frequency of examinations with Dr. Paruch is not as important as the factors of supportability and consistency under the current regulations addressing the evaluation of medical source opinions. 20 C.F.R. § 404.1520c. While not required, the ALJ is certainly permitted to consider the length of the claimant's treatment relationship with the medical source and the frequency of visits since these factors "may help demonstrate whether the medical source has a longitudinal understanding of [claimant's] impairment(s)." 20 C.F.R. § 404.1520c(c)(3)(i)-(iii).

9

Here, the ALJ appropriately noted Dr. Paruch's limited experience with Plaintiff on which to base his opinion.

Next, Plaintiff argues the record does not support the inconsistency of Dr. Paruch's opinions when compared to his own mental status examinations and treatment records from Plaintiff's primary care providers. Plaintiff notes that at his mental status examinations with Dr. Paruch on July 24, 2019 and September 30, 2019, Dr. Paruch reported his anxious and depressed mood (Tr. 342, 405), which is consistent with the observations of his primary care physician, Dan Frissell, M.D., who also observed Plaintiff's anxiety upon presentation (Tr. 357, 366, 376, 386).

Plaintiff further argues the ALJ failed to comment on the results of psychological testing which supported Dr. Paruch's opinion, including a score of 37 on the Beck Depression Inventory, indicating "severe depression"; a score of 39 on the Beck Anxiety Inventory indicating "a potential cause of concern"; a score of 87 on the Liebowitz Social Anxiety Scale, indicating severe social phobia; and a score of 25 out of 28 on the Panic Disorder Severity Scale. (Tr. 344-46). Lastly, Plaintiff argues that the observations of third parties were also consistent with Dr. Paruch's opinions of Plaintiff's mental limitations.

Upon review of the record, the Court finds the ALJ properly considered the supportability and consistency of Dr. Paruch's opinions when he compared Dr. Paruch's mostly normal mental examination findings with his opinion assessing significant mental limitations. The fact that the ALJ did not use the words "supportability" and "consistency" is not determinative; word choice alone does not warrant reversal. See Kamann v. Colvin, 721 F.3d 945, 951 (8th Cir. 2013) (an argument based on semantics does not justify reversal when the ALJ's decision is supported by substantial evidence); Gray v. Saul, No. 4:20 CV 1077 SRW, 2021 WL 5279578, at *11 (E.D. Mo. Nov. 12, 2021) (same). Moreover, the ALJ may reference a factor in a test without further

10

explanation if elsewhere in the opinion he discusses evidence relating to that factor. See Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004) (arguable deficiencies in opinion writing unlikely to affect the outcome).

The ALJ cited evidence from Dr. Paruch's examinations that does not support his opined limitations. On July 24, 2019, Plaintiff denied a history of psychiatric treatment, hospitalizations, or suicide attempts and Dr. Paruch noted that Plaintiff's "speech, behavior, judgment, thought content, cognition and memory were normal." (Tr. 342). On September 30, 2019, Dr. Paruch reported that Plaintiff's depressive symptoms were fairly well controlled with medication and found him to be calm, pleasant, and cooperative.  (Tr. 18, 402, 405, 407).

Likewise, the ALJ properly considered the supportability and consistency of Dr. Paruch's opinions by discussing in detail medical findings and observations in the record that were inconsistent with disabling mental symptoms. (Tr. 16-19). On February 24, 2018, Plaintiff was seen by psychologist Dr. Thomas Spencer for a consultative psychological exam. Plaintiff complained of extreme depression and anxiety, panic attacks, and isolation at home except for medical appointments. (Tr. 391). Dr. Spencer's diagnostic impressions were panic disorder and recurrent, moderate major depressive disorder; however, he noted that Plaintiff's flow of thought was appropriate, his affect calm, that he denied suicidal or homicidal thoughts, and that his insight and judgement were normal. *(*Tr. 392, 394).

On March 15, 2018, Plaintiff was seen by Dr. Frissell to address his back pain, obesity and hypertension. Dr. Frissell reported that Plaintiff had an anxious affect, although his mental status was grossly normal. (Tr. 349-357). Plaintiff saw Dr. Frissel again on May 15, 2018, when he was noted to have depression with anxiety. (Tr. 358). Plaintiff reported that Cymbalta helped with his

anxiety and denied "memory problems, decreased concentration, irritability, panic attacks, sadness/tearfulness, or sleep disturbances." (Tr. 16, 358, 364).

Dr. Anthony Newell saw Plaintiff on November 20, 2018 for a consultative physical exam. (Tr. 17, 322). Dr. Newell noted no mental conditions or symptoms in his neurological examination. (Tr. 324).

On December 6, 2018, Plaintiff saw Dr. Spencer for another consultative psychological exam. (Tr. 331). Dr. Spencer's diagnostic impressions were generalized anxiety disorder and persistent depressive disorder; however, he noted Plaintiff had no impairment in memory, intelligence, speech, or flow of thought. (Tr. 333). Plaintiff exhibited no impairment of expressive language, was fully oriented, and denied hallucinations. (Id.). Dr. Spencer characterized Plaintiff's impairments in his ability to learn, recall, and use information, to consistently stay on task, and to relate to and work with others on a consistent basis as moderate. (Id.)

Plaintiff saw Dr. Frissell again on December 26, 2018. At that time, Dr. Frissell noted depression with anxiety but characterized Plaintiff's mental status as "grossly normal." (Tr. 17, 368, 376). Plaintiff denied other psychiatric symptoms, including decreased concentration, irritability, panic attacks, sadness/tearfulness and sleep disturbances and stated that Cymbalta helped his depression and anxiety and that he was attending counseling. (Tr. 333, 368, 374-76). Plaintiff saw Dr. Frissell a third time on April 24, 2019. (Tr. 377). Plaintiff again denied psychiatric symptoms besides anxiety, and Dr. Frissell characterized his mental status as "grossly normal." (Tr. 384, 386).

The ALJ also considered the opinion of Steven Akeson, Psy.D., who found Plaintiff has moderate impairment in his ability to understand, remember or apply information, interact with others, and concentrate, persist or maintain pace, and mild limitations in his ability to adapt or

12

manage himself. (Tr. 82-112). With the exception of his opinion regarding concentration, persistence, and pace, the ALJ found Dr. Akeson's opinion generally consistent and well supported by the objective medical record. (Tr. 18). However, the ALJ determined that based on Plaintiff's statements, his issues with concentration resulted from his physical conditions, not his mental conditions. Therefore, ALJ concluded that the record supported only a mild impairment in concentration, persistence, and pace. (Tr. 18).

Likewise, the ALJ found Dr. Spencer's December 6, 2018 opinion finding moderate impairment in Plaintiff's ability to learn, recall and use information, and relate to and work with others mostly persuasive and supported by his observations. (Tr. 19). However, the ALJ concluded that Dr. Spencer's opinion that Plaintiff displayed a moderate impairment of concentration was unpersuasive because his examination did not indicate major problems with concentration. (Id.).

Although the ALJ did not discuss the specific findings of the psychological testing, he acknowledged that Plaintiff was limited by severe mental impairments implicated by the tests, including generalized anxiety disorder, persistent depressive disorder, and PTSD. (Tr. 12, 344–346). Because the ALJ accounted for these impairments in limiting the RFC, the information from the testing "adds nothing new to the weight of the evidence." See Corwin v. Saul, No. 20-CV-2003-LTS, 2021 WL 1593258, *11 (N.D. Iowa Mar. 8, 2021), report and recommendation adopted, No. C20-2003-LTS, 2021 WL 1224906 (N.D. Iowa Mar. 31, 2021) (holding that health questionnaires added nothing to weight of evidence because ALJ found claimant's depression to be a severe impairment and limited RFC accordingly). In any event, the failure to include the results of the psychological testing is not reversible error because although "required to develop the record fully and fairly, the ALJ is not required to discuss every piece of evidence submitted." Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (holding that lack of specific discussion of

13

psychiatrist's finding of marked limitation was not error because ALJ elsewhere discussed the psychiatrist's other findings). Here, the ALJ fairly developed the record by not only referencing observations that would support a higher level of functioning like normal speech, behavior, judgement and thought process, but also citing evidence that would support greater limitations like the alleged decreased concentration, dysphoric mood, sleep disturbance, anxiety, social isolation, and depression. (Tr. 17, 18). These alleged symptoms were acknowledged by the ALJ and implicate the psychological testing. Failure to discuss the testing explicitly does not indicate that it was not weighed by the ALJ. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that failure to discuss evidence does not indicate it was not considered).

Lastly, Plaintiff argues the ALJ failed to comment on the observations of third parties in evaluating the of consistency of Dr. Paruch's assessments and opinions. In support of his claim, Plaintiff submitted six third-party letters describing symptoms similar to those alleged. (Tr. 15–16, 288–303). The letters are from three personal friends as well as his grandmother, mother, and uncle detailing their experiences with Plaintiff and his medical conditions.

The ALJ is not required to articulate how he considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d). Nevertheless, the ALJ did mention the letter from Plaintiff's mother opining that there was "no possible way [Plaintiff] could work due to his physical and mental state." (Tr. 19, 299-300). Given that this opinion is an issue reserved for the Commissioner, see Dotson v. Saul, No. 4:20 CV 310 RWS, 2021 WL 2529786, at *4 (E.D. Mo. June 21, 2021), the ALJ permissibly found it neither persuasive nor unpersuasive. (Tr. 19). The ALJ also addressed the letters at Step Three when determining whether Plaintiff's impairments met the severity of a Listing, finding the third-party observations of Plaintiff's alleged panic attacks were not substantiated by the medical evidence. (Tr. 14).

Moreover, to the extent Plaintiff suggests the ALJ did not consider third-party evidence in sufficient detail, where the same evidence that supports discounting the testimony of the claimant also supports discounting the testimony of a third-party, the ALJ's failure to fully address the assertions of third parties is "inconsequential." Tindall–kolthoff v. Colvin, No. 2:15CV46NCC, 2016 WL 5390934, at *11 (E.D. Mo. Sept. 27, 2016) (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)); see also Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 2006). Here, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical and other evidence of record. (Tr. 16). Thus, the ALJ properly afforded little weight to Plaintiff's third-party letters for same reasons he discounted Plaintiff's assertions as to severity of his medical conditions.

### VI. Conclusion

Substantial evidence on the record as a whole supports the ALJ's determination that Dr. Paruch's opinion was unpersuasive. The ALJ adequately articulated the supportability and consistency factors from 20 C.F.R. § 404.1520c(c). For these reasons, the Commissioner's decision will be affirmed.

Dated this 10th day of February, 2022.

*[signature: John A. Ross]*

JOHN A. ROSS  
UNITED STATES DISTRICT JUDGE